Good morning. Judge Joe Pryor and I are pleased to welcome our colleague from Pennsylvania, Judge Rubino, who will be sitting with us all of this week. He has sat with us many times before and it's great to have him back to assist us in our work. Senior judges perform a great service to our country. They work for free, shoulder about 20% of the caseload of the federal judiciary and we'd be in a world of hurt if we didn't have them. It's great to have him back working for free and helping us this week. We have four appeals to hear this morning. Today is our busiest day of the week and we have looked at, of course, not only the record and the authorities cited in your briefs, but we've read your In the limited time that's available to you this morning, you should feel free to get straight to the heart of your argument. You're not going to waive anything by not arguing something that is in your brief. We're probably going to have some questions this morning, so when we do, it'd be helpful to get an answer. Please don't treat the red light as aspirational. When it shines, it's time to wrap things up, particularly this morning when we have so much to do. We'll begin with United States v. Pemberton. Ms. Hayes. Thank you, Your Honor. May it please the court, I'm Anne Hayes. I represent the appellant Devin Pemberton this morning. By way of very brief introduction, Mr. Pemberton pleaded guilty to one count of sex trafficking involving a minor. The young woman involved was two months shy of her 18th birthday. She initiated contact with Mr. Pemberton by responding to an online advertisement posted in the adult section of a webpage soliciting women to work as prostitutes. When they met, the young woman A.S. told Mr. Pemberton that she was 18 years old. She worked for part of one day, then chose to leave the location where she was working, and at that point, her association with Mr. Pemberton ended. The issue before the court is whether Mr. Pemberton's guilty pleadings were flawed such that his conviction must be vacated. A review of the record shows that Mr. Pemberton's guilty plea was not knowing and intelligent because confusion about the mens rea element of the offense permeated the Rule 11 hearing. It seemed to me, though, that when they came back the second day, that insofar as the district court did not start anew, start from scratch, go back to the beginning, however you want to phrase it, that any error about that, it was waived because the district court asked whether we could go straight to a reasonable opportunity to observe the victim, and defense counsel said, yes, we can do that. That's acceptable, Judge. The defense counsel was willing, in terms of describing the nature of the offense, to go directly to the issue of the mens rea element. I am not sure that the defense attorney waived all other parts of the Rule 11 colloquy. So just to be clear, you're not arguing that because the plea proceeding went in two parts that that was somehow an error in and of itself. Is that right? I am not presenting that argument this morning, though I will note that the procedure was highly irregular in terms of once something gets set, gets delegated to a magistrate judge, I've never seen a case where it bumps back and forth without interruption. There is nothing wrong with it. Maybe it doesn't ordinarily happen, but the question is, is that error? And there's a judicial officer, the magistrate judge, who's authorized to take the plea. He becomes unavailable, death, illness, or for whatever reason, someone else who is authorized to take a plea takes over, goes over the same matters. It's one hearing, isn't it? Judge Rivera, I believe that you've described two hearings where the first one, clearly the first hearing aborted, the judge, the magistrate judge said, I can't take your plea. I don't think there's a factual basis that satisfies the legal elements. I need to step back now. I need to return this to the district judge. And I think that the district judge started over, even though the district judge did two or three times say, let's start up where the magistrate judge left off. That is, that seems to be entirely contrary to 1828 U.S.C. Section 636, where something is delegated to a magistrate judge, where it isn't. The magistrate judge makes a conclusion in something that's dispositive to the case. That should result in a report and recommendation that goes to the district judge. Here . . . Yeah, but here's the problem. It seems . . . Yes, Your Honor. So when they come back, the judge said, Judge Snead took a lot of time yesterday with him and it was a one-hour hearing. I think she went through everything. Now, I'm happy to go through everything again if anybody thinks we need to do that, but I think everything was covered. Now, I need to finish up the guilty plea, but I think we left off at the elements of the fence. It was just . . . it just kind of came to a halt. So I'm willing to continue where she left off. She then asked counsel, is that acceptable to you or do you want me to go through all the questions again? He replied, Judge, that's acceptable. And I think that in terms of whether he invited error at that point, I don't think he did. I think it's important to look at the context and the two remarks that surround the remarks that the judge just read. Immediately before the judge said, would you like me to go . . . talked about what happened the day before, the AUSA had had a protracted discussion about the elements of the offense. And the AUSA said at page 30, would you like me to go through all the facts in the plea agreement again or do you want me to focus on just the facts that relate to the reasonable opportunity? Because the judge had asked her to illuminate her on the facts that would satisfy the mens rea. Then after the judge says those things that you've quoted . . . The day before. It was on that element, right? They had left off on that element. That's where the confusion arose. A confusion from our Mosey opinion, which has since been clarified. And so, the defense attorney did say, yes, we can start off. My read, I think it can be fairly read that the defense attorney is speaking only about that's where we'll start in terms of our what needs to be proven to establish the offense. Rather than that, what needs to be done in terms of completing the Rule 11 hearing. But nevertheless, I want to concede your honors. Nevertheless, even if you considered the second hearing to be a complete hearing, most of the Rule 11 requirements were covered. And so, I must acknowledge it's difficult to establish error in this case. Where the error did come in, though, and I think it's a very serious error, was that confusion about the mens rea permeated the plea hearing. And the judge, although she made diligent efforts to determine what the appropriate mens rea was, she didn't come to her final conclusion about that matter until after the guilty plea had been entered. So, in the beginning, Judge, the magistrate. Well, the judge said on the second day, told the prosecutor, I need to be satisfied you've met the requirements of the statute, which are he had a reasonable opportunity to observe the second victim. So, tell me again, how did he have a reasonable opportunity to observe the victim, right? The judge said that, your honor. Right. So, I mean, it seemed that the second day, there was no longer confusion about the elements, about the mens rea element, and what the government has to prove is just that reasonable opportunity, right? The judge had come to that decision, but I don't think that the record establishes that Mr. Pemberton understood the nuances and understood that that was different from what his attorney had told him previously. Previously, Mr. Pemberton's attorney had told him a reasonable opportunity . . . But then the court says, you had the opportunity, Mr. Pemberton, a reasonable opportunity to observe her. Is that right? Are you acknowledging that? And the defendant said, yes, I am. The court said, you're admitting. The defendant said, yes, your honor. And then the court said, all right, you admit the government would be able to prove that fact. You had a reasonable opportunity to observe the victim. And the defendant says, yes, your honor. Right? Yes, your honor. Nevertheless, I think the record reflects that the defendant still thought that there were only two ways to establish the mens rea, and that would be . . . When you say the record reflects, what are you pointing to? I will point to this. Defense counsel repeatedly said there were two ways to satisfy the mens rea, knowledge or reckless disregard. That was consistent. And the defense attorney's position was that you could prove reckless disregard simply by proving reasonable . . . And the judge then, in the final analysis, asked the defendant, did you have a reasonable opportunity to observe? And the matter was clarified. When she asked that, still, I think it was nuanced enough that the defendant had always been told by his attorney that it was enough to show reasonable opportunity to observe. Which is correct. His attorney mistakenly equated that with reckless indifference. We know, based on the recent opinion I wrote for the court, that that's right, that that's a correct statement of the law, that proof that the defendant had a reasonable opportunity to observe the victim is sufficient. You don't have to prove anything else. Your Honor, it's important to note that in the White decision that you're referring to, and also in the judge's analysis, it was important to them that the May 2015 amendment to subsection C was important in their analysis because that's where the words reckless indifference were added to subsection C. I want to note that the judge made a factual mistake in that this offense occurred in February of 2015. It occurred before the amendment on which White relied to say now everything is clear, and it occurred before the amendment on which the judge explicitly relied. After Mr. Pemberton had entered his guilty plea, the judge demonstrated her misunderstanding about this by emphasizing that she noted that the statute was amended in May 2015 to include reckless disregard, and she said that clarifies everything. I think that solves the issue that I was grappling with. It was that amendment. White also relies on that amendment to say it's very clear, and in fact, in White, the court noted that the 2015 amendment abrogated the interpretation of the interplay between the two subsections that was described in Mosey. I mean, it was also dictum in Mosey. Yes, Your Honor, but nevertheless, the statute reasonably and was understood to have just two ways to establish before the amendment to establish that the judge applied a later amendment. In her analysis, I just think that this establishes that confusion permeated. We know that if the judge had applied the understanding that the record reflects the defendant had, she would not have accepted his guilty plea because she did not think the facts established reckless indifference. Both the magistrate judge and the judge had a real problem with finding that after Mr. Pemberton asked the young woman, how old are you, and she said 18. They were very uncomfortable with thinking that that amounted to reckless indifference, even though Mr. Pemberton, with his misunderstanding of the law and his confusion about it, was willing to acknowledge that reckless indifference and the opportunity to observe were equivalent. So for those reasons, Your Honor, I would argue that Mr. Pemberton's guilty plea was not knowing and intelligent. When you have a judge and a defendant who have different ideas of what the statute means and what facts are necessary to prove, and when the judge relies on that very distinction to accept the guilty plea, that plea was not knowing and intelligent. Thank you. Ms. Tiffin. Good morning. May it please the court, Dawn Tiffin on behalf of the United States of America. I'd like to begin, if I may, with counsel's general notion that this plea was unknowing and involuntary. That was not actually raised in the appellant's brief. There was some amorphous suggestion that there was confusion regarding the elements of this offense, but not a contention that the plea itself was not knowing and was not voluntary. That being said, with regard to a period of months difference between the offense in this case and the actual 2015 amendment of subsection C, which also has not been raised prior to oral argument today, Mr. Pemberton actually admitted reckless disregard throughout the plea proceedings in this case. He certainly was not required to. The government's theory of guilt was that he had a reasonable opportunity to observe under subsection C, rendering it unnecessary to prove either that he actually knew the victim's age or that he recklessly disregarded it. Nevertheless, there were repeated admissions that he, quote, did not do enough or could have done more to verify the victim's age, not only with regard to the victim A.S. in count one, but the other victims in the dropped count and other offenses as well. So to that extent, it really is much ado about nothing because we have admissions on the record that he doesn't matter that he committed the offense before the amendment of the statute. It would not matter, Your Honor, because he if if if I think what counsel may be suggesting is that because the offense was committed prior to the enactment of the amendment, that the government may have been obligated to prove both a reasonable opportunity to observe and reckless disregard. If that was the case, he did admit reckless disregard for the age openly before Judge Covington in the second day of the plea proceedings. So he admitted to any behavior that would form the factual basis for a conviction under a theory of reckless disregard. So, Your Honors, I am I am looking at the green light as aspirational. So if there are no further questions for me. You want to address the question of whether there was one hearing or two hearings? Well, I consider day two a continuation of the first hearing, really. And as Your Honor has already pointed out several times over, there's no rule against that. And I think a characterization that it is somehow irregular is a little bit unfair. It just depends on the circumstances, whether that is necessary. Sometimes it's a scheduling issue. In this case, the magistrate judge wanted to ensure that the district court judge had a and ensure that this particular defendant understood the nature of the charges against him and was making a knowing involuntary plea. So, again, there's no rule as we've briefed extensively. There's no rule against doing that. And in this case, all of the goals of Rule 11 colloquy were met. What about the right to counsel? Well, the right to counsel was specifically addressed by the magistrate judge. It was not the following day. But our position is that the first day counts, for lack of a more articulate word. And again, as the panel has pointed out, defense counsel was given an opportunity, several opportunities, actually, to raise anything that needed to be raised. And what is actually interesting, at the very end of the plea colloquy before the district court judge on day two, there was one final opportunity given to counsel to raise anything that the district court might not have covered specific to the plea colloquy, but anything else. And counsel said there was nothing more. Also interesting directly before that, counsel did speak up and state that there needed to be some sort of clarification that Mr. Pemberton was pleading to a subsection B offense, which came with a 10-year mandatory minimum instead of a different subsection, which had an independent mandatory minimum. So Mr. Pemberton had opportunities to speak up if necessary. Mr. Pemberton did so. So there's no reason to believe that the colloquies continued from one day to another before the two different judges left anything uncovered and that Mr. Pemberton's plea was anything but knowing and voluntary. Let me ask you one more question. At what point in the transcript do you contend the judge had established the elements conclusively? Well, before she actually took Mr. Pemberton's plea. Before she placed him under oath or after? Your Honor, I believe it was before he was under oath. I'll have to double check that. But she, they, as Ms. Hayes actually acknowledges, they went through a protracted discussion on what exactly were the elements, what exactly was the United States obligated to prove in this case. They finally came to an understanding and at that point the hearing shifted into a more formal tone where the defendant was put under oath and she ran through, the judge ran through any additional parts of the Rule 11 colloquy that she felt she needed to touch on. Can you tell me where in the transcript? Yeah, I will find that for you, Your Honor. And if I understand counsel's argument correctly, there's a contention that the district court judge didn't actually decide what the elements of the offense were until after the guilty plea had already been accepted. But the hearing up until the point of the formal Rule 11 questions was only about that one specific issue. What were the elements of the offense? What did the United States have to prove? And did Mr. Pemberton acknowledge those? And the district court judge went through that with him both under oath and not under oath to parse out whether he understood what was going on and also whether the other one hearing he would have been on the road from the time that the magistrate judge started the hearing. So if he continued until the next day, did he have to be placed on the road the second time? Well, I don't know, Your Honor, to be perfectly candid. I don't know that that is a specific requirement. But certainly if it was, Mr. Pemberton had an opportunity to let the district court know that. Your Honor, I don't, I'm still searching for this. I don't know if you want me to continue doing so or submit it later. Well, let me make a suggestion. Was it at page 29 where the court says the government would need to prove beyond a reasonable doubt that the defendant had a reasonable opportunity to observe? Well, that sounds good, Your Honor. And I'm on page 29 now. Because the judge does come back later and talks about the elements again after taking the plea. So certainly I just was curious at what point you think she decided? Well, I think she decided before she took his plea. And I think the record bears that out. And in particular, the passage that you've just identified. At the end of the hearing, my perception of that is really just restating the obvious for everybody. They've been through this probably hour-long hearing at this point to discuss this. And what's clear from the record, crystal clear, is that this judge was not going to proceed with accepting a guilty plea in this case unless and until she was absolutely and wholly satisfied that this defendant understood what he was pleading to. And not just that, that he admitted to the conduct that would form the factual basis to convict him under section 1591 subsection c. And she did both of those things repeatedly. And I think to all of our satisfaction, there's no question here that Mr. Pemberton knew what he was doing and wanted to plea. He had the benefit of having a second count of sex trafficking of a minor dropped. So this was to his benefit. And even though he spoke up the day before to sort of make it known for himself, and this came up at sentencing of course, that he didn't actually know the victims were 18, it mattered not because that was not the theory under which the United States was proceeding. And that was not the evidence that they had to show to convict him. Well, I thank you for your time. And I would ask this court to affirm the judgment and sentence of Mr. Pemberton in this case. Thank you. Thank you, Ms. Tiffin. Ms. Hayes, you've saved two minutes. It seems to me, Ms. Hayes, before you get started, this is a plain error case. It is, Your Honor. So not only do you have to establish that an error occurred, but that it was plain. Yes. And that he would not have pleaded guilty but for that, right? Yes, Your Honor. It seems to me on this record a tough burden. It's always a tough burden, Your Honor. But I would point to a few things concerning the nature of the plainness of the error. One is the statutory language itself. Subsection A gives two ways that you can prove the mens rea in a case involving sex trafficking of a minor. C gives a way to present the evidence going to one of those means, knowledge. It didn't affect reckless indifference. And I think that's— What Mosey said about that was wrong. Excuse me? What Mosey said about that in dicta was wrong. Well, I would point out that in White, the court didn't say it was wrong. The court said— It didn't have to. But I would note that in court, in White, the court took that opinion fairly seriously and said that the statutory amendment had abrogated that understanding. Not that it had shown that it had never been correct, but that it abrogated it. Yeah, it makes it clear that that cannot be the law any longer. It doesn't mean that it was correct beforehand, though. I understand that point, Your Honor, but I do want to note that in White, the court truly did rely on the amendment in coming to the conclusion that at this point in time— That offense was after the amendment, right? Excuse me, sir? That offense was after the amendment. No, it predated the amendment. No, no, no, in White. Oh, in White, yes. Yes, Your Honor. Yes, so that wasn't a problem there. But I do want to note that while the defendant did say, yes, I admit there was reckless indifference, that was clearly based on a misunderstanding of— That was a legal conclusion stated by a defendant that was not supported by the facts that he admitted. Defendants are responsible for knowing the facts that they're admitting. They're not responsible for knowing the law. That was a mistake. I also want to point out that counsel has mentioned facts relating to other defendants, but they were other victims, but they were not part of the charged offense. Your Honor, I see my time is up, and I ask that you reverse Mr. Pemberton's conviction. Thank you, Ms. Hayes. We have your case. We'll move to the next one, United States v. Brookings.